## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SARA THERESA PEDRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-CV-985 |
| | ) | |
| DUKE UNIVERSITY and DUKE | ) | |
| UNIVERSITY HEALTH SYSTEM, INC., | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants Duke University and Duke University Health Systems, Inc. (collectively "Duke" or "Defendants") submit this memorandum of law in support of their motion to compel arbitration and stay this proceeding under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and, alternatively, to dismiss Plaintiff Sara Pedro's ("Plaintiff") Complaint for lack of subject matter jurisdiction under to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

This action involves employment claims brought by Plaintiff against Duke, her employer. (Docket Entry #1 Plaintiff's Complaint (hereinafter "Compl."). Specifically, the Complaint asserts claims arising out of Plaintiff's employment including discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, the Fair Labor Standards Act, and North Carolina statutory and common law claims.

In August 2016, Duke hired Plaintiff to work as a Clinical Nurse II with the Emergency Department at Duke University Medical Center. On August 16, 2016, Plaintiff signed an Acknowledgement of Receipt of the Duke Staff Handbook, specifically acknowledging receipt of Duke's Dispute Resolution Process ("Duke DRP"). Duke's DRP requires both Duke and its non-union employees to submit covered disputes to binding arbitration. Despite the parties' mutual agreement to arbitrate the claims at issue in this action, Plaintiff has refused to submit her claims to arbitration and instead pursued her claims in this action. Duke now moves the Court for an order (i) staying this proceeding and compelling Plaintiff to honor her agreement to arbitrate; or, in the alternative, (ii) dismissing the Complaint for lack of subject matter jurisdiction

## STATEMENT OF THE RELEVANT FACTS

### A. Plaintiff's Complaint

Plaintiff commenced this action by filing her complaint in this Court on October 27, 2017. In her Complaint, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.2(5), and North Carolina common law. (Compl. ¶¶ 226-318). Plaintiff alleges religious discrimination, denial of religious accommodation, retaliation, constructive discharge, wrongful discharge in violation of North Carolina public policy, wage-and-hour violations, breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of

emotional distress, and negligent infliction of emotional distress, all arising out of her employment with Duke.  (*See Id.*).

### B.  Relevant Procedural Background

The Summons and complaint were served on Defendants on or about November 2, 2017.  On November 15, 2017, Defendants filed a consent motion for an extension of time to respond to the complaint. (Docket Entry #9).  The next day, Clerk of Court John Brubaker entered a Text Order granting Defendants' consent motion to extend time to answer or otherwise respond to the complaint to December 26, 2017.

### C.  Duke's Private Dispute Resolution Procedure

Duke enforces a progressive private dispute resolution procedure designed to promote internal settlement of any employment claim or controversy.  (*See* Declaration of Antwan Lofton (hereinafter "Lofton Decl.") ¶¶2-3, Exhibit A.   The dispute resolution procedure applicable here is entitled "Dispute Resolution Process" (hereinafter "Duke DRP"). ( *Id.*)

The DRP applies to "[a]ny claim arising out of or relating to employment policies[.]" (Lofton Decl. Exhibit A. p.1)  The DRP makes clear that its procedures are mutually applicable to Duke and its employees.  (*Id.*) ("Both the staff member and Duke are required to utilize this procedure to resolve disagreements falling within its scope.").  Disagreements falling within the scope of the DRP include "[a]ny claim based in whole or in part on federal, state or local laws whether statutory or common law."  (*Id.* p.3).

The DRP provides for multiple internal reviews of an employee's claims seeking informal resolution, with binding arbitration as the last step. (*Id.* pp. 6-8).  The arbitration

3

hearing is to be conducted by an outside and neutral arbitrator from the American Arbitration Association ("AAA"). (*Id.*). The DRP states that the arbitrator's decision "shall be final and binding between the parties as to all claims which were or could have been raised in connection with the dispute, to the full extent permitted by the United States Arbitration Act [*i.e.*, the FAA]." (*Id.* p.8).

A current copy of the DRP is always available electronically on-line or in hard copy form from the Human Resources department. (Lofton Decl., ¶3 ).

### D. Plaintiff's Employment with Duke and Agreement to Arbitrate

Duke hired Plaintiff to work as a Clinical Nurse II with the Emergency Department at Duke University Medical Center beginning on August 8, 2016. (Lofton Decl. ¶1). At all times during her employment, Plaintiff has been covered by Duke policies, including Duke's DRP. (*Id.*). At no time during her employment has Plaintiff been subject to the terms of a collective bargaining agreement. (*Id.*).

Plaintiff agreed to submit covered disputes to the Duke DRP upon her hire.[1] On August 16, 2016, Plaintiff received a copy of the Duke Staff Handbook and signed an

---

[1] Duke clearly informs non-union applicants for employment that any disputes concerning their employment or termination from employment will be governed by the Duke DRP. As a condition of employment with Duke, Plaintiff electronically signed a Candidate Certification agreeing that:

> any dispute or controversy arising out of or related to [Plaintiff's] employment or termination with Duke University or Duke University Health System, including any claim based in whole or in part on federal, state, or local laws, whether statutory or common law, shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure.

(See Declaration of Denise Motley ¶1, Exhibit A p.1). Duke utilizes an online application system called "Brassring." (*Id.*). The first time an employee utilizes Brassring, he or she must electronically agree to the Candidate Certification Policy. (*Id.*). On May 12, 2016, Plaintiff utilized Brassring and electronically accepted the Candidate Certification. (Motley Decl. ¶4).

4

Acknowledgement of Receipt. (Lofton Decl. ¶5, Exhibit B). The Handbook includes a summary of the Duke DRP. (Lofton Decl. ¶5). In the Acknowledgement, Plaintiff confirmed "I have reviewed and had an opportunity to discuss with a supervisor any questions that I have regarding the content of this handbook." (Lofton Decl. Exhibit B). At this time, Plaintiff specifically acknowledged receipt of certain policies, including the "Dispute Resolution Process" by writing her initials and the date next to the DRP policy name. (*Id.*). The Acknowledgement also reminded Plaintiff that the handbook and all policies are available online. (*Id.*).

Additionally, Plaintiff acknowledged her requirement to utilize the Duke DRP because she initiated proceedings under the policy. On or about December 15, 2016, Plaintiff contacted Duke Human Resources following her receipt of a written warning. (Lofton Decl. ¶7). Human Resources provided Plaintiff another copy of the Duke DRP at this time. (*Id.*). On December 22, 2016, Plaintiff completed and signed the Dispute Resolution Effort form to initiate the process. (Lofton Decl. ¶7, Exhibit C). Duke informed Plaintiff that a Human Resources representative would be in touch with her in early January 2017. (Compl. ¶127).

Prior to meeting with Human Resources, Duke placed Plaintiff on administrative leave effective December 30, 2016. (Lofton Decl. ¶8). Thereafter Plaintiff requested and was approved for an extended personal leave of absence and has not returned to work at Duke. (*Id.* ). On or about October 25, 2017, Duke notified Plaintiff that her most recent request for an extension of her leave was approved to run through January 4, 2018. (*Id.*).

## ARGUMENT

**I.    Plaintiff's and Defendants' Agreement to Arbitrate the Claims in this Lawsuit Is Enforceable Under the FAA**

Courts consistently adhere to the strong federal policy in favor of arbitration and arbitration agreements. *See, e.g., Gilmore v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 880-81 (4th Cir. 1996). Indeed, this Court and others have routinely enforced Duke's DRP. *See, e.g., Carmon v. Duke* University, No. 1:16-CV-01296-LCB-LPA (M.D.N.C. May 9, 2017); *Nazarova v. Duke University*, No. 1:16-CV-00910-WO-JEP, 2017 WL 823578 (M.D.N.C. Mar 2, 2017), *appeal denied*, No. 17-1427 (4th Cir. Aug. 28, 2017)(unpublished); *Greene v. Durham Regional Hosp.*, No. 1:10-CV-00824-WO-JEP (M.D.N.C. 2015); *Clinkscales v. Duke University*, No. 1:12-cv-01354-CCE-JLW (M.D.N.C. 2013); *Wen-Chouh Lin v. Brodhead, et al.*, No. 1:09-CF-882-CCE-LPA (M.D.N.C 2012); *Armstrong v. Duke Univ.*, No. 1:04CV01206, 2006 WL 213952 (M.D.N.C. 2006); *Cooper v. Duke Univ.*, No. 1:98-CV-00721 (M.D.N.C. 1999); *Dunlap v. Duke Univ.*, No. 1:96-CV-00140 (M.D.N.C. 1996); *Coats v. Duke Univ., et al.*, No. 1:94-CV-00292 (M.D.N.C. 1995), *aff'd*, No. 97-1534 (4th Cir. 1999); *Solomon v. Duke Univ.*, 850 F. Supp. 372 (M.D.N.C. 1993); *Abdullah v. Duke Univ. Health Sys.*, 2009 WL 1971622 (E.D.N.C. 2009); *Whitehead v. Duke Univ. Med. Ctr.*, No. 5:05-CV-641-F(3) (E.D.N.C. 2006); *St. Clair v. Duke Univ.*, No. 5:99-CV-127-BO(2) (E.D.N.C. 1999); *Martin v. Duke Univ., et. al.*, 133 N.C. App. 116, 514 S.E.2d 306 (1999); *Futrelle v. Duke Univ.*, 127 N.C. App. 244, 488 S.E.2d 635 (1997).

One of the primary sources and expressions of the federal policy favoring arbitration is contained in the FAA. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA reflects 'a liberal federal policy favoring arbitration agreements.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Section 2 of the FAA states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA's provisions are mandatory. Consequently, courts must compel arbitration when a valid arbitration agreement exists. *See* 9 U.S.C. § 3; *Adkins*, 303 F.3d at 500 ("[t]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory."). "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Mitchell v. HCL Am., Inc.*, No. 5:15-CV-565-FL, 2016 WL 3129176, at *13 (E.D.N.C. June 2, 2016) (quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir.2001)).

An arbitration agreement is enforceable under the FAA if it is (i) part of a contract or transaction involving interstate commerce and (ii) valid under general principles of contract law. *See Adkins*, 303 F.3d at 500-01. As explained below, the agreement

7

between Duke and Plaintiff to arbitrate the claims at issue here satisfies both of these elements and therefore is enforceable under the FAA.

### A. Plaintiff's Employment Relationship with Duke Involved Interstate Commerce

The FAA's reference to interstate commerce reflects Congressional intent to extend FAA coverage to the limits of federal power under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277-81 (1995). Accordingly, the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id*. A matter "involves" commerce under the FAA if it simply "affects" commerce – a standard commonly applied by courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id*. at 274. The United States Supreme Court reiterated all of the above points in *Circuit City v. Adams*, 532 U.S. 105 (2001).

Duke treats patients from states other than North Carolina and from foreign nations. Duke also receives payments from individuals and vendors for its services from states other than North Carolina. Employees of Duke travel to states other than North Carolina on behalf of Duke. The operations of Duke involve substantial interstate activity. (Lofton Decl., ¶9). Given these facts, and applying the principles above, Plaintiff's employment with Duke clearly constituted a "transaction" affecting interstate commerce. *See, e.g., Circuit City*, 532 U.S. at 113-19. North Carolina federal courts have explicitly held as much in enforcing Duke's arbitration agreements with employees.

8

*See, e.g., Abdulla v. Duke University Health System, Inc.,* No. 5:09-CV-8-FL, 2009 WL 1971622, at *3 (E.D.N.C. July 8, 2009) (citing *St. Clair v. Duke Univ. and Duke Univ. Med. Ctr.*, No. 5:99-CV-127-BO(2), 1999 WL 1939975, at *1 (E.D.N.C. May 14, 1999) (noting that "Duke is engaged in interstate commerce in its provision of medical and educational services, and an employment contract between Duke and one of its employees 'involv[es] commerce' under the FAA.")).

### B.   The Arbitration Agreement Is Valid and Enforceable Under General Principles of Contract Law

An arbitration agreement's validity is determined by reference to general principles of contract law. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 685 (1996) (noting that "'state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally'") (citation omitted). However, to the extent that state law carves out specific rules for arbitration agreements or other types of contracts that do not apply generally to all contracts, these rules are "inconsonant with, and [are] therefore preempted by, the federal law." *Id.* at 688.

"North Carolina has a strong public policy favoring the settlement of disputes by arbitration. . . . [North Carolina's] Supreme Court has held that where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 118, 516 S.E.2d 879, 881, *writ denied, review denied*, 350 N.C. 832, 539 S.E.2d 288 (1999) (citations and quotations omitted).

9

The court in *Oakwood* provides good guidance on just how strong the public policy favoring arbitration is in North Carolina. In *Oakwood,* the employer implemented a program that required the company and its employees to submit any employment disputes to binding arbitration. *Oakwood,* 134 N.C. App. at 116. The employer provided employees with copies of the program, and instructed that an employee's decision to continue employment would constitute an agreement to be bound by the terms of the program. *Id.* The employer did not require employees to sign the agreement. *Id.* at 120. The court in *Oakwood* stated that the FAA imposed "no requirement that a written arbitration agreement be signed by the party to be charged, and it is sufficient that a party by act or conduct commits himself to the agreement." *Id.* (quoting *Real Color Displays, Inc. v. Universal Applied Technologies Corp.,* 950 F.Supp. 714 (E.D.N.C. 1997)). Further, the court held that because the employee received the program materials and voluntarily continued her employment with notice that the terms would be mutually effective, she was bound to arbitrate her employment claims. *Id.* at 120-121.

Here, the arbitration agreement between Plaintiff and Duke is valid and enforceable. Like other Duke employees not covered by a labor union contract, Duke required Plaintiff to agree to submit employment-related grievances to the DRP as a condition of employment. Plaintiff expressly acknowledged receipt of the Staff Handbook and the Dispute Resolution Process and continued reporting to work. The DRP was available to Plaintiff at all times through on-line computer access or the department of Human Resources. Indeed, Plaintiff availed herself of the Duke DRP when she initiated a grievance under the policy.

In addition, the arbitration agreement binds *both* Plaintiff and Duke to arbitrate claims within its scope. These facts are more than sufficient to establish the arbitration agreement's validity under both North Carolina and federal law. *See, e.g., Adkins*, 303 F.3d at 501; *Hightower v. GMRI, Inc.*, 272 F.3d 239, 243 (4th Cir. 2001) ("[U]nder North Carolina law, '[c]ontinued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to the binding arbitration agreement contained therein'") (citation omitted).

In sum, the arbitration agreement between Duke and Plaintiff satisfies all of the requisite elements needed to be valid and enforceable. The only remaining question is whether Plaintiff's claims fall within the scope of the arbitration agreement.

## II. The Claims Raised by Plaintiff Fall Squarely Within the Scope of the Agreement to Arbitrate

### A. Applicable Standards Relating to the Interpretation of Arbitration Agreements

Under the strong federal policy favoring arbitration, it is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25; *see also Adkins*, 303 F.3d at 500 ("'due regard must be given to the federal policy favoring arbitration . . . [therefore,] ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.") (citation omitted). Thus, a court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

11

Where, as here, a mandatory arbitration provision is broadly drafted, only an "express provision excluding a particular [claim] from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration" will remove such a claim from consideration by an arbitrator. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). Application of these principles mandates that Plaintiff be required to pursue any and all of her purported claims against Duke through the DRP, not this Court.

**B.     The DRP Applies To Plaintiff's Employment Discrimination Claims**

The DRP's procedures apply to "[a]ny claim based in whole or in part on federal, state or local laws whether statutory or common law[,]" including "[a]ny claim arising out of or relating to employment policies[.]" (Lofton Decl., Exhibit A at pp. 1 and 3). Given this broad language, the claims at issue here clearly are subject to mandatory arbitration. *See, e.g., American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (holding that an arbitration clause is broad when it uses language such as "arising out of or related to."). To that point, as stated above in Section I, this Court and other North Carolina federal courts have routinely and consistently upheld the validity of Duke's dispute resolution program to compel arbitration of employment claims.

**III.     The Court Should Stay This Case Pending the Outcome of Arbitration Between the Parties or, in the Alternative, Dismiss the case for Lack of Subject Matter Jurisdiction**

Section 3 of the FAA states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

9 U.S.C. § 3. This provision requires the trial court to stay judicial proceedings where the issue presented is subject to arbitration under an agreement to arbitrate. The FAA leaves the trial court no discretion on this point; rather, it mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists. 9 U.S.C. §§ 3, 4. Accordingly, under § 3 of the FAA, this lawsuit should be stayed and the court should issue an order compelling arbitration pursuant to the DRP.

Alternatively, because the parties have agreed to arbitration, the court should dismiss this lawsuit for lack of subject matter jurisdiction. "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). *See also, Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 562-63 (M.D.N.C. 2004) (dismissing, pursuant to Rule 12(b)(1), claims within the scope of an arbitration agreement).

Here, where all of the claims raised by Plaintiff in this lawsuit fall within the scope of a valid and enforceable arbitration agreement, the Complaint should be dismissed under Rule 12(b)(1).

13

## CONCLUSION

Because the parties mutually agreed to arbitrate the claims at issue in this action, the Court should grant Duke's motion to compel arbitration and (i) stay proceedings relating to Plaintiff's claims and issue an order compelling arbitration pursuant to the FAA or, alternatively, (ii) dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted this the 5th day of January, 2018.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

**/s/  Kimberly J. Lehman**
Robert A. Sar (N.C.  Bar No. 22306)
Kimberly J. Lehman (N.C. Bar No. 43001)
4208 Six Forks Road, Ste. 1100
Raleigh, North Carolina 27622
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: bob.sar@odnss.com
E-mail: kimberly.lehman@odnss.com
*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT

I certify that Defendants' Memorandum in Support of Motion to Compel Arbitration or, in the alternative, to Dismiss for Lack of Subject Matter Jurisdiction contains 3,520 words as counted by the word count feature of Microsoft Word 2010, and thereby complies with Local Rule 7.3(d)(1).

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.

**/s/ Kimberly J. Lehman**
Robert A. Sar, N.C. Bar No. 22306
Kimberly J. Lehman, N.C. Bar No. 43001
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919.787.9700
Facsimile: 919.783.9412
E-mail: robert.sar@ogletreedeakins.com
E-mail: kimberly.lehman@ogletreedeakins.com
*Attorneys for Defendants*

15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SARA THERESA PEDRO,
       Plaintiff,     )
                   )
v.                 )      Case No. 1:17-CV-985
                   )
DUKE UNIVERSITY and DUKE   )
UNIVERSITY HEALTH SYSTEM,  )
INC.,              )
       Defendants.   )

The undersigned hereby certifies that on this date a copy of the foregoing **Memorandum in Support of Motion to Compel Arbitration or, in the alternative, to Dismiss for Lack of Subject Matter Jurisdiction** was electronically filed with the Clerk of Court using the CM/ECF system which will send notice of the same to:

> B. Tyler Brooks
> Kate Oliveri
> THOMAS MORE LAW CENTER
> 24 Frank Lloyd Wright Drive, Suite J 3200
> Ann Arbor, Michigan 48106
> tbrooks@thomasmore.org
> koliveri@thomasmore.org
> *Attorneys for Plaintiff*

This the 5th day of January, 2018.

> **/s/ Kimberly J. Lehman**
> Kimberly J. Lehman, N.C. Bar No. 43001
> OGLETREE, DEAKINS, NASH,
> SMOAK & STEWART, P.C.
> 4208 Six Forks Road, Suite 1100
> Raleigh, NC 27609
> Telephone: 919.787.9700
> Facsimile: 919.783.9412
> E-mail: kimberly.lehman@ogletreedeakins.com
> *Attorneys for Defendants*

32400949.1